## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Edward Ross Bergren,                          Civil No. 10-2534 (PAM/JJG)

                    Petitioner,

v.                                            REPORT AND RECOMMENDATION

Joan Fabian, Commissioner of the
Minnesota Department of Corrections,

                    Respondent.

JEANNE J. GRAHAM, United States Magistrate Judge

This case is before the undersigned United States Magistrate Judge on Edward Ross Bergren's 28 U.S.C. § 2254 petition for writ of habeas corpus. Bergren is represented by attorney Frederick J. Goetz. Respondent Joan Fabian is represented by St. Louis County Attorney Mark S. Rubin. The petition was referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

## I.    BACKGROUND

Bergren is serving a 158-month term of imprisonment at the Minnesota Correctional Facility in Stillwater, Minnesota. In October 2005, Bergren was convicted by a jury of first degree assault, third degree assault, and fourth degree criminal damage to property, based on circumstantial evidence that he pushed his girlfriend, Deliena Lamberton, out of his moving truck in the early morning hours of July 8, 2005.

### A.    Evidence at Trial

Lamberton testified that on the night of July 7, 2005, she and Bergren went to a club and had some drinks. Lamberton described herself as "somewhat" intoxicated, and she could not

remember several details about the night, such as getting into an altercation with another woman at the club, leaving in Bergren's truck, or anything else until she woke up the next day in the hospital.

The State called several witnesses who interacted with Bergren at the hospital on the night of the incident. Two individuals who were standing in the hospital's parking garage testified that they saw Bergren park in a dark alley half a block away from the hospital and repeatedly punch something in his truck while yelling obscenities. The witnesses then saw Bergren drag Lamberton out of the truck and drop her on the ground while he grabbed his cell phones and cigarettes. Bergren carried Lamberton to the emergency room doors, where he dropped her a second time. Other witnesses testified that, once inside the hospital, Bergren was belligerent, uncooperative, and very rough with Lamberton, who was semi-conscious. He was so disruptive that hospital personnel asked police officers to remove him from the area.

The State also elicited testimony about inconsistencies in Bergren's statements that night. For example, Bergren told a hospital worker that Lamberton fell while getting out of his truck before it was fully parked at the hospital, but later, Bergren told the police that Lamberton fell out of his truck near the club. The police searched for evidence of an accident near the club but found nothing. Another officer happened upon the scene of the accident a few hours later. That officer saw blood and scuff marks made by a rolling body, along with Lamberton's sweatshirt and sandals laying in the road.

The emergency room doctor who treated Lamberton described her injuries as a fractured left forehead and cheek, facial lacerations, scattered hemorrhages throughout the brain, and abrasions from head to toe on the left side of her body. The doctor could not definitively say whether Lamberton fell or was pushed out of the truck, but he testified that her injuries were

2

consistent with falling from a vehicle moving at thirty miles per hour. An accident reconstructionist testified that he was not able to determine exactly how Lamberton fell out of the truck.

Lamberton also testified about an incident that had happened in the late spring of 2005. She and Bergren were riding in his truck and arguing, when Bergren reached over, opened her door, and told her to get out. Lamberton testified that she screamed and cried as Bergren pushed her toward the open door, but that she was able to close and lock the door. Lamberton's friend Lesley Kersten corroborated her story and testified that Lamberton told her about this incident the day after it happened.

**B.    Lamberton's First Recantation and Bergren's Direct Appeal**

On October 26, 2005, about two weeks after Bergren was found guilty, a defense investigator contacted Lamberton by telephone. Lamberton told the investigator she remembered more about the incident than she had testified to. Lamberton recalled dancing at the club, arguing with Bergren, and leaving the club in his truck. She also remembered wanting to vomit and trying to open the passenger door. In response to the investigator's question about why she did not tell these details to the jury, Lamberton implied she felt pressured by the presence of her family and women's advocates in the courtroom. Lamberton said she could not recall whether Bergren pushed her out of the truck, but the last thing she remembered was feeling the need to vomit and opening the truck door. Bergren moved for a new trial based on Lamberton's statement. The trial court denied the motion.

Bergren appealed his conviction and sentence to the Minnesota Court of Appeals, arguing that Lamberton's statement was newly discovered evidence that warranted a new trial. The court

of appeals applied the three-prong *Larrison* test[1] in deciding whether Bergren should have been granted a new trial. *State v. Bergren*, No. A06-743, 2007 WL 2472071, at *11 (Minn. Ct. App. Sept. 4, 2007). Based on the district court's finding that Lamberton's credibility was diminished by her inconsistent statements, the court of appeals concluded that Bergren had not satisfied the first *Larrison* factor and affirmed the trial court's denial of a new trial. *Id.* The Minnesota Supreme Court denied review.

### C.     Lamberton's Second Recantation and Bergren's Postconviction Petition

Two years later, on October 28, 2008, Bergren's lawyer obtained a sworn statement from Lamberton in which she changed her accounts of the night of July 7, 2005, and of the incident in the spring of 2005. As to the spring incident, Lamberton averred that she had lied to Kersten and at Bergren's trial. According to Lamberton this time, she and Kersten had gotten high on methamphetamine at Kersten's house that night. When Bergren picked her up, they argued about her drug use while driving home in his truck. Lamberton was upset and threatened to kill herself by jumping out of the truck. Bergren told her to "go ahead and jump," which upset Lamberton further. The next day, out of anger, Lamberton told Kersten that Bergren had threatened to push her out of the truck.

As to the night of July 7th, Lamberton recalled she had been drinking heavily at the club and argued with a woman who was talking to Bergren. She and Bergren left the club after the bartender refused to serve her more drinks. Lamberton remembered feeling sick in Bergren's truck and trying to open the door, but slipping and falling out once the door was open.

---

[1]     "The *Larrison* test provides that a new trial may be granted on the ground of false testimony when: (1) the court is reasonably well satisfied that the testimony in question was false; (2) that without the testimony the jury might have reached a different conclusion; and (3) that the petitioner was taken by surprise at trial or did not know of the falsity until after trial." *Dobbins v. State*, 788 N.W.2d 719, 733 (Minn. 2010).

Bergren filed a postconviction petition in state district court, asserting that Lamberton's second recantation was newly discovered evidence. The district court denied the petition without an evidentiary hearing, based on *Larrison*. On appeal, Bergren argued that the district court erred by denying his postconviction petition without an evidentiary hearing. Bergren did not claim a violation of his federal due process rights, but relied exclusively on state law to support his argument. The Minnesota Court of Appeals affirmed the district court's decision in *Bergren v. State*, No. A09-849, 2010 WL 88559, at *2 (Minn. Ct. App. Jan. 12, 2010). Bergren sought review by the Minnesota Supreme Court, but not on federal constitutional grounds. The Minnesota Supreme Court denied review on March 30, 2010.

### D.    Bergren's Habeas Petition

Bergren filed his federal habeas petition on June 21, 2010. The sole question presented is "[w]hether the Minnesota courts denied Petitioner his right to due process, thereby violating the Fourteenth Amendment to the United States Constitution, when they summarily denied Bergren's Petition for Postconviction Relief even though he produced newly discovered evidence." (Petr.'s Mem. Supp. Pet. Writ Habeas Corpus at 1; Doc. No. 2.) Bergren argues that his federal right to due process was violated when his request for an evidentiary hearing on his postconviction petition was denied. (*Id.* at 7.)

## II.    DISCUSSION

"Before seeking habeas corpus relief under § 2254, a prisoner ordinarily must 'fairly present' his federal claims to the state courts." *Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010). The purpose of this requirement is to give state courts the first opportunity to correct errors alleged by state prisoners. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). To satisfy the fair presentation requirement, the prisoner must present the federal nature of his claim

5

to each level of the state courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The prisoner must do more than outline the underlying facts or "make a general appeal to a constitutional guarantee as broad as due process." *Turnage*, 606 F.3d at 936 (quotations omitted). "At minimum, . . . the petitioner during direct appeal must have explicitly referred the state courts to the United States Constitution or federal case law." *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995) (citations omitted). If a state prisoner does not fairly present a federal claim to the state courts, and the claim could no longer be reviewed because of a state procedural rule, the claim is procedurally defaulted. *Turnage*, 606 F.3d at 936.

The Eighth Circuit's recent decision in *Turnage* involved almost identical facts to the present case. In *Turnage*, a federal habeas petitioner asserted that the state courts violated his federal right to due process by denying him postconviction relief without an evidentiary hearing. *Id.* The postconviction petition was based on a post-trial recantation by a key trial witness. *Id.* at 935. "The dispositive question," according to the court, was "whether the petitioner presented any federal claims to the Minnesota Supreme Court on appeal from the trial court's denial of postconviction relief." *Id.* at 936. The court found the petitioner had not, and that he was "attempting to raise a new claim in federal court that he failed to present in state court." *Id.* at 936-37. The petitioner's failure to present his federal due process claim to the state courts meant that it was procedurally defaulted. *Id.* at 940.

Here, Bergren's only claim for habeas relief is that his federal right to due process was violated when he was denied an evidentiary hearing on his postconviction petition. Bergren did not present this claim to the Minnesota Court of Appeals or the Minnesota Supreme Court. Thus, the requirement of fair presentation is lacking.

6

Under Minnesota law, "matters raised or known but not raised in an earlier petition for postconviction relief will generally not be considered in subsequent petitions for postconviction relief." *Powers v. State*, 731 N.W.2d 499, 501 (Minn. 2007) (citing *Spears v. State*, 725 N.W.2d 696, 700 (Minn. 2006)). The federal due process claim is not novel, and the Court finds that Bergren knew about the claim when he filed his postconviction petition, but that he failed to raise it before the Minnesota Court of Appeals or the Minnesota Supreme Court. Thus, the Court concludes, Bergren would be barred from attempting to revive his defaulted claim in state court. *See Turnage*, 606 F.3d at 940-41.

This Court may not review Bergren's defaulted habeas claim unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (*quoted in Turnage*, 606 F.3d at 941). Bergren does not attempt to show why he did not present his federal claim to the state courts, nor does he invoke the miscarriage-of-justice exception. Even if Bergren had argued it would be a miscarriage of justice not to review his defaulted claim, he has not presented "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." *Schlup v. Delo*, 513 U.S. 298, 316 (1995) (*quoted in Turnage*, 606 F.3d at 941); *see also Storey v. Roper*, 603 F.3d 507, 524 (8th Cir. 2010) (explaining that to show a "fundamental miscarriage of justice," the petitioner must show "he is actually innocent"). Considering the other evidence at trial and Lamberton's inconsistent accounts, Bergren has not demonstrated that he is actually innocent.

## III.    CONCLUSION

Bergren's federal due process claim is procedurally defaulted, and no exception applies to permit its review. Therefore, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. No. 1) be **DENIED** and that **JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: February 18, 2011

  s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **March 8, 2011**.  A party may respond to the objections within ten days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.